IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| Surinder Arora, Kevin Arora, and Sawan Kirpal LLC, <br><br> Plaintiffs, <br><br> v. <br><br> Manish Kharat, and Sawan Management, LLC, <br><br> Defendants. | |
| Manish Kharat, and Sawan Management, LLC, <br><br> Counter-Plaintiffs, <br><br> v. <br><br> Surinder Arora, Kevin Arora, Anu Arora, and Raj Rani Hospitality, Inc. <br><br> Counter-Defendants. | Case No. 3:20-cv-50387 <br><br> Honorable Iain D. Johnston |

**MEMORANDUM OPINION AND ORDER**

Plaintiffs Surinder Arora, Kevin Arora, and Sawan Kirpal LLC originally brought this action seeking recovery for a purported breach of contract. Defendants separately filed an action state court, which was removed to this Court, against the same Plaintiffs—as well as Anu Arora and Raj Rani Hospitality, Inc.—alleging breach of contract, fraud, and conspiracy to commit fraud. The Court then consolidated the removed case into this original action, and Defendants refiled their complaint as a counterclaim. Dkt. 48. Before the Court is Plaintiffs' motion to

1

dismiss the counterclaim under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim.[1] For the below reasons, that motion [52] is granted in part and denied in part.

I. **Factual Allegations**

On February 18, 2020, Surinder Arora allegedly sold Manish Kharat a hotel located in Rockford, Illinois, for $750,000.[2] Dkt. 48-1, at 35. Kharat alleges that he became aware that the hotel was available for purchase because Surinder Arora, and his son Kevin Arora, advertised the hotel in a group chat, of which Kharat was a member. Dkt. 48, ¶ 13.

Beyond the $750,000 purchase price, Kharat also agreed to quitclaim his condominium in Chicago to Kevin Arora, though that arrangement is not included in the purchase agreement. Nevertheless, that deed transfer allegedly occurred during the closing of the hotel sale. *Id.* ¶ 22. The hotel sale also included the transfer of Sawan Management LLC to Manish Kharat. The purchase agreement describes Sawan Management as "the entity that is the owner of record." Dkt. 48-1, at 35. The contract explains that the sale of the hotel is made "as-is" and "solely in reliance on buyer's own inspection and that no representation or warranties of any kind whatsoever, express or implied, have been made by Seller." *Id.* The next sentence of the alleged contract has been marked out, but reads, "Seller does

---

[1] Though Sawan Kirpal LLC is a Plaintiff in this case and is listed in the counterclaim's caption as a counter-defendant, that company has not been named in any claim in the counterclaim and is thus not a counter-defendant.
[2] Though the alleged contract describes the property as the Roadway Inn, the correct name appears to be the Rodeway Inn. Dkt. 48-2, at 13; Dkt. 48-3, at 33.

warrant that Buyer is the actual deeded owner of the property and there are no other liens on the title of the property."[3] *Id.* Notwithstanding the "as-is" language, the agreement expressly provides for a warranty that Arora was not aware of any major plumbing, electrical, or roof issues and that the property meets required building standards. *Id.* The purchase of the hotel was allegedly financed by Surinder Arora, with Kharat (through Sawan Management) to repay Surinder Arora in accordance with a loan agreement signed on the same day as the hotel sale. Dkt. 48-2, at 9.

The crux of the dispute stems from debts that Manish Kharat discovered after the purchase of the hotel. These included utilities bills, prepaid hotel stays that were used after the purchase, credit card bills that were accrued under Arora's management, as well as other debts. Dkt. 48-3, at 31–32. Though Arora paid some of those bills, the outstanding balance was allegedly $85,996.34. *Id.* at 48-3, at 32. Based on this debt, Kharat decided not to pay the loan payments he owed Surinder Arora. Instead, he deducted the amount of those loan payments from the money that Surinder Arora owed him. *Id.* (deducting in items 14 and 15). Plaintiffs allege in the first-amended complaint that Kharat has failed to make any payments, in breach of the loan agreement. Dkt. 11, ¶¶ 2, 24.

The allegations don't end there, though. At some point, the property tax bill for the hotel became delinquent. The taxes allegedly accrued from the time before and after the sale of the hotel, such that both sides would have been responsible for

---

[3] Though this sentence has been marked out, the change is not accompanied by any initials or a date.

a portion of the bill. Dkt. 48, ¶ 20. Kevin Arora then sent a text message to Kharat asking if Kharat was going to make the payment, because the hotel was apparently open to a potential tax sale. Dkt. 48-2, at 15. Kharat further alleges that—after the sale—Surinder Arora arranged for a hotel employee to let some movers into one of the rooms of the hotel so that Arora could retrieve some items of furniture, even though he was no longer the rightful owner. Dkt. 48, ¶ 23; Dkt 48-2, at 22. Additionally, Kharat claims that a pending lawsuit existed at the time of the sale against the hotel for personal injuries stemming from the existence of bed bugs, but that Arora failed to disclose the lawsuit before the hotel sale. Dkt. 48, ¶ 26; Dkt. 48-3, at 36–39. Kharat later decided that he should pay the agreed loan payments, but instead of paying Arora, he sent the monthly payments to his own attorney instead, who held the payments in an escrow account. Dkt. 48, ¶ 30.

Despite the purchase agreement's language that Arora was unaware of any outstanding building code issues, Kharat later became aware that numerous serious building code violations existed and had existed at least since August of 2019, about six months before the sale. Dkt. 48, ¶ 27. The violations were indeed significant and extensive, including a note implying that people were sleeping in areas of the hotel that had been previously condemned. Dkt. 48-4, at 3 (under section 404.4.4). Kharat alleges that this information was not publicly available on the City of Rockford website, and so he could not have known about the extensive code violations unless Arora told him about them. Dkt. 48, ¶ 28. At some point, Arora hired an attorney and an architect in an apparent attempt to remediate these issues. The issues were

4

not resolved, however. On July 9, 2020, almost five months after the sale, the hotel was deemed unsafe to occupy by the City of Rockford and was condemned.[4] Dkt. 48-4, at 28.

From these allegations, Manish Kharat and Sawan Management bring four counterclaims. He alleges that Surinder Arora, Anu Arora, Kevin Arora, and Raj Rani Hospitality breached both the purchase agreement and the loan agreement (Counts I and II), as well conspired to commit fraud (Count IV). He further alleges fraud against Surinder Arora (Count III).[5]

## II. Analysis

Under Rule 8, the plaintiff must allege facts sufficient to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). For a complaint to be plausible, the plaintiff's factual allegations, as opposed to any legal conclusions, must allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court accepts as true all the plaintiff's well-pleaded factual allegations and views them in the light most favorable to the plaintiff. *Landmark Am. Ins. Co. v. Deerfield Constr. Inc.*, 933 F.3d 806, 809 (7th Cir. 2019). On a motion to dismiss, the moving party bears the burden of establishing the insufficiency of

---

[4] Though not made clear by the allegations in the counterclaim, Kharat seems to further contend that some equipment at the hotel was subject to a court judgment in another case stemming from another loan default involving Raj Rani Hospitality and Anu Arora, though he also alleges that these circumstances are "not the subject of the instant litigation." Dkt. 48, ¶¶ 33, 36; *see also id.* ¶ 39 (alleging that Ascentium had an interest in some furniture, fixtures, and equipment).

[5] As explained further below, it's unclear if the counterclaim alleges fraud against only Surinder Arora, or if the others are included in this claim as well.

the complaint's allegations, and thus that the complaint should be dismissed for failure to state a claim. *Marcure v. Lynn*, 992 F.3d 625, 631 (7th Cir. 2021). The same legal standard applies when analyzing a motion to dismiss a counterclaim, with the plaintiff bearing the burden of establishing the insufficiency of the defendant's allegations in its counterclaim. *See Firestone Fin. Corp. v. Meyer*, 796 F.3d 822, 826–27 (7th Cir. 2015).

### a. Rule 8—A short and plain statement

Plaintiffs first argue that Defendants' counterclaim should be dismissed because it lacks organization and coherence, in violation of Rule 8's mandate that complaints and counterclaims present a short and plain statement. Furthermore, Plaintiffs contend that the counterclaim makes *ad hominin* attacks on Plaintiffs and includes irrelevant allegations. Dkt. 52, at 2–4. In support, Plaintiffs cite *United States v. Lockheed-Martin Corp.*, 328 F.3d 374 (7th Cir. 2003) for the proposition that dismissing an unintelligible complaint is not exceptional. But the Seventh Circuit further noted, "Some complaints are windy but understandable. Surplusage can and should be ignored." *Id.* at 378.

The counterclaim at issue here undoubtedly contains surplusage. Specifically, page eleven begins a section alleging a prior pattern of fraud by Plaintiffs. The section even admits that the allegations therein are "not the subject of the instant litigation." Dkt. 48, ¶ 33. If true, these allegations offer a fuller picture into the events giving rise to this litigation, but they are not directly relevant to the claims presented here. Nevertheless, an eight-paragraph frolic into the irrelevant does not

render the rest of the counterclaim unintelligible. On the contrary, the allegations are clear, and the Court denies Plaintiffs' motion to dismiss on this argument.

### b. Counts I and II—Breach of contract

Plaintiffs next move the Court to dismiss Defendants' counterclaims that they breached both the purchase agreement and the loan agreement. Dkt. 52, at 11–12. Plaintiffs advance two arguments in support: (1) that only Surinder Arora was a party to the contracts at issue, and (2) that the allegations are insufficient to state a breach of contract against Surinder Arora.

Plaintiffs are correct that Surinder Arora is the only Plaintiff alleged to be a party to the contracts. And Defendants have not advanced any argument to the contrary. Defendants contend that Kevin Arora was involved in advertising the hotel for sale. They allege that Anu Arora was the true owner of the hotel, though they allege no facts to support that conclusion. Indeed, it appears to be purely speculative given that Surinder Arora is the individual that signed the legal documents transferring ownership of the hotel to Manish Kharat, and Defendants do not challenge the legality of that transfer. Lastly, Defendants contend that Raj Rani Hospitality was the company responsibility for managing the hotel and not Sawan Management. Defendants do not, however, explain how the hotel management company can be held liable for a breach of contract by the hotel's owner. Indeed, managing a hotel is the not same as owning it.

Defendants' argument runs afoul of Illinois contract law. In *Northbound Group, Inc. v. Norvax, Inc.*, the Seventh Circuit reiterated the general rule of

7

Illinois contract law that "a contract cannot bind a nonparty." 795 F.3d 647, 651 (7th Cir. 2015) (quoting *EEOC v. Waffle House, Inc.*, 534 U.S. 279, 294 (2002)). The alleged agreements attached to the counterclaim establish that Surinder Arora and Manish Kharat were the only parties to the purchase agreement. Dkt. 48-1, at 35. The alleged loan agreement was between Sawan Management (now owned by Manish Kharat) and Surinder Arora. Dkt. 48-2, at 9. Thus, Kevin Arora, Anu Arora, and Raj Rani Hospitality were not parties to the purported contracts at issue and cannot be held liable for a breach of those alleged contracts. Thus, the Court dismisses Defendants' breach of contract counterclaim against Kevin Arora, Anu Arora, and Raj Rani Hospitality.

Next, Plaintiffs contend that the counterclaim fails to state a breach of contract claim against Surinder Arora, notwithstanding that he is a party to the alleged contracts. Dkt. 52, at 6 ("And Counts I and II must be dismissed against Surinder as well for failing to state a claim."). Defendants' response fails to address this argument because Defendants incorrectly believed that Plaintiffs conceded that Surinder Arora was a proper party to the breach of contract claims. Dkt. 60, at 3, ¶ 10.

Plaintiffs point to the familiar elements of a breach of contract claim: (1) a valid and enforceable contract, (2) substantial performance by the claimant, (3) a breach by the party against whom the claim is brought, and (4) resulting damages. *Keystone Montessori Sch. v. Vill. of River Forest*, 2021 IL App. (1st) 191992, ¶ 65. But in federal court, Defendants do not need to allege facts necessary to support

8

each element. Federal courts do not require fact pleading. "Because complaints need not identify the applicable law, it is manifestly inappropriate for a district court to demand that complaints contain all legal elements (or factors) plus facts corresponding to each." *Chapman v. Yellow Cab Coop.*, 875 F.3d 846, 848 (7th Cir. 2017) (citation omitted). Instead, Defendants' counterclaim need only allege facts sufficient to raise the plausible inference that Surinder Arora is liable for breach of contract. *Id.* (quoting *Twombly*, 550 U.S. at 563).

In Count I, Defendants claim that Surinder Arora breached the purchase agreement. In support of that claim, they have attached the agreement. They further allege that Surinder Arora breached the agreement by concealing the true state of disrepair of the hotel even though the agreement asserted that Surinder Arora was unaware of any existing building code violations. Defendants further allege that Surinder Arora was aware of those violations because of the 2019 notice of violations. Based on those allegations, Defendants have alleged a plausible breach of contract claim against Surinder Arora.

In Count II, Defendants claim that Surinder Arora breached the loan agreement by failing to live up to his obligation to deal in good faith. Specifically, Defendants contend that Surinder Arora failed to tell them that some furniture and equipment at the hotel remained subject to a mortgage and failed to inform them about the unpaid debts and municipal code violations. Dkt. 48, ¶ 50. But although those allegations clearly arise under the alleged purchase agreement, Defendants have not identified how those allegations relate to the loan agreement. Indeed, the

9

loan agreement they attached to the counterclaim does not appear to address those obligations. Dkt. 48-2, at 9–11. Thus, because Defendants have not alleged that Surinder Arora breached his obligations under the loan agreement, they have not plausibly alleged a claim in Count II.

### c. Count III—Fraud

In Count III, Defendants bring a counterclaim alleging fraud.[6] Plaintiffs move the Court to dismiss Defendants' fraud claim on the theory that it fails to meet the strictures of Rule 9(b), which employs a heightened pleading standard for claims sounding in fraud or mistake, except that mental states may be alleged generally. Fed. R. Civ. P. 9(b). To satisfy the requirements of Rule 9(b), the counterclaim must allege the "who, what, where, and when of the alleged fraud." *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 738 (7th Cir. 2014).

The elements of common-law fraud are (1) a false statement of material fact, (2) the statement was made knowingly, (3) the statement was made to induce an action in reliance on the statement, (4) the claimant reasonably relied on the statement, and (5) resulting damage. *Feis Equities, LLC v. Sompo Int'l Holdings, Ltd.*, 2020 IL App. (1st) 191072, ¶ 51. Defendants' fraud claim centers on the allegations that Plaintiffs failed to inform them about the multitude of building code violations on the property. Defendants further allege that Plaintiffs knew about the code violations because they hired an attorney and an architect to assist in

---

[6] Plaintiffs' motion seems to believe that Defendants bring this count against all Plaintiffs. Indeed, the Counterclaim does not make that clear. On the one hand, the heading for the claim expressly names only Surinder Arora. But then the allegations under the fraud claim include Kevin Arora, Anu Arora, and Raj Rani Hospitality. Dkt. 48, ¶¶ 53–56.

10

navigating the required fixes. These allegations are certainly enough to allege the who, what, where, and when against Surinder Arora because, if true, they establish that he was not truthful during the sale of the hotel. Indeed, the allegation that he previously hired an architect and an attorney to address the violations and improve the property sufficiently alleges that he knew building code violations existed, notwithstanding his attestation in the agreement that none did.

Furthermore, Plaintiffs' argument that the fraud claim fails for lack of reasonable reliance misses the mark. The cases Plaintiffs cite addressed motions for summary judgment and were thus not tasked with determining the sufficiency of allegations. Dkt. 52, at 8.[7] And Defendants allege that they relied on the absence of unpaid debts and the absence of building code violations when agreeing to the deal. That is enough at this stage. Whether that reliance was reasonable is a question for the fact finder. *Cozzi Iron & Metal, Inc. v. U.S. Office Equip., Inc.*, 250 F.3d 570, 574 (7th Cir. 2001) (noting that reasonable reliance is typically a question for the fact finder); *see also Fe Digital Invs. Ltd. v. Hale*, 301 F. App'x 540, 543 (7th Cir. 2008) (same).

Nevertheless, Defendants have not alleged with particularity how Kevin Arora, Anu Arora, or Raj Rani Hospitality were involved in the purported fraud because the counterclaim does not allege that they made any false statements.

---

[7] Iain D. Johnston, Standing Order on Supporting Memoranda and Exhibits, https://www.ilnd.uscourts.gov/judge-info.aspx?Bt1LmR2QgBbCj2VD6w9tXA== ("In memoranda supporting or opposing a motion to dismiss, cases that were decided on summary judgment (or on appeal of summary judgment) are not particularly helpful because of the differing standings.").

Instead, the counterclaim merely alleges that they were aware of the building code violations and the unpaid debts. But only Surinder Arora is a party to the contracts at issue, so the counterclaim fails to allege how or when Kevin Arora, Anu Arora, or Raj Rani Hospitality made a false statement. Thus, the Court dismisses Count III against them.

### d. Count IV—Conspiracy to commit fraud

Lastly, in Count IV, Defendants claim that Plaintiffs conspired to commit fraud. Defendants bring this counterclaim explicitly against Surinder Arora, Anu Arora, Kevin Arora, and Raj Rani Hospitality. Beyond the argument on reasonable reliance, which the Court has already held is a question for the fact finder, Plaintiffs challenge the sufficiency of the counterclaim's allegations on the ground that they are overbroad, conclusory, and fail to make any specific allegations against Kevin Arora, Anu Arora, or Raj Rani Hospitality. Dkt. 52, at 9–10 ("Counter-Plaintiffs make no allegations as to how Anu, Kevin, or Raj Rani Hospitality planned or performed anything together or in cooperation with Surinder, who is described as the sole bad actor.").

Because Defendants' conspiracy claim alleges fraud as the underlying bad act, it must be held to the same heightened pleading standards as Defendants' underlying fraud claim. *Cincinnati Life Ins. Co. v. Beyrer*, 722 F.3d 939, 948 (7th Cir. 2013). As explained above, the "who" of the fraud claim is clear. Defendants allege that Surinder Arora committed fraud by failing to disclose the unpaid debts and the existence of building code violations. The "when" and "how" are equally

12

clear, as the alleged fraud occurred during the sale of the hotel by not disclosing the information. But conspiracy does not require that all members of the purported conspiracy themselves committed the fraud. Rather, a civil conspiracy exists when "a combination of two or more persons" agree to conduct some concerted effort for "either an unlawful purpose or a lawful purpose by unlawful means." *Lewis v. Lead Indus. Ass'n*, 178 N.E.3d 1046, 1053 (Ill. 2020). The claim, then, serves the purpose of extending liability "beyond the active wrongdoer to those who have merely planned, assisted or encouraged the wrongdoer's acts." *Id.* (quoting *Adcock v. Brakegate, Ltd.*, 645 N.E.2d 888, 894 (Ill. 1994)).

In this case, the counterclaim sufficiently alleges that Surinder Arora was the "active wrongdoer" and that Kevin Arora assisted him. Indeed, the counterclaim alleges that Kevin Arora was involved in the sale by assisting in the communication between the parties and advertising the hotel during the period leading up to the sale. The counterclaim further alleges that Kevin remained involved in Surinder Arora's affairs after the sale in that he communicated with Kharat about whether Kharat was going to pay the tax bill. Thus, Defendants plausibly allege that Kevin Arora conspired with his father, Surinder Arora, to commit fraud because it alleges that Kevin Arora was significantly involved in the transaction that underlies the fraud claim. Indeed, the counterclaim alleges that Kevin Arora benefited from the

13

transaction in that Kharat agreed to transfer a Chicago condominium into Kevin Arora's name.

The counterclaim fails to state a conspiracy claim against Anu Arora or Raj Rani Hospitality, however. The counterclaim asserts that Anu Arora was the true owner of the hotel but offers no factual allegations to support that claim. Indeed, as pleaded, it is purely speculative. The same is true of Raj Rani Hospitality. The counterclaim does not allege sufficient facts to raise the plausible inference that Raj Rani is liable for conspiracy in that it assisted or encouraged the fraud. Indeed, the counterclaim alleges no facts at all to suggest how Raj Rani Hospitality was involved in any of the events leading to this suit.

Thus, although the conspiracy claim may continue against Surinder and Kevin Arora, the Court grants Plaintiffs motion to dismiss Raj Rani Hospitality and Anu Arora from the conspiracy claim without prejudice.

### III. Conclusion

For the foregoing reasons, the Court grants in part and denies in part Plaintiffs' motion to dismiss the counterclaim [52]. All dismissals are without prejudice. Defendants may amend their counterclaim by June 30, 2022. If Defendants decline the opportunity to amend by that date, the dismissals will become with prejudice.

For clarity, the Court reiterates each holding:

- The Court denies Plaintiffs' motion to dismiss the counterclaim as unintelligible;

- The Court dismisses Count I against Kevin Arora, Anu Arora, and Raj Rani Hospitality without prejudice. Count I will continue against Surinder Arora;

- The Court dismisses Count II in its entirety without prejudice;

- If Count III is pleaded against Kevin Arora, Anu Arora, or Raj Rani Hospitality, the Court dismisses that claim against them. Count III will continue against Surinder Arora; and,

- The Court dismisses Count IV against Anu Arora and Raj Rani Hospitality, but the conspiracy claim will proceed against Surinder and Kevin Arora.

Date: May 20, 2022

_____
Honorable Iain D. Johnston
United States District Judge